IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:19-CV-139-RJ

| | |
|---|---|
| TOMMIE TURNER, III, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-24, DE-31] pursuant to Fed. R. Civ. P. 12(c). Claimant Tommie Turner, III ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) challenging the final decision of the Commissioner that Claimant was no longer eligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. The parties have consented to magistrate judge jurisdiction over all proceedings in this case, and the motions were referred and reassigned here for disposition. [DE-21, -22]; Sept. 17, 2020 Text Order. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the decision of the Acting Commissioner is affirmed.

## I. STATEMENT OF THE CASE

In a determination dated May 28, 1997, Disability Determination Services ("DDS") found Claimant disabled as of February 1, 1997.[1] (R. 15). On April 22, 2016, DDS determined that Claimant was no longer disabled as of April 1, 2016 and upheld the determination after a hearing in front of a state agency Disability Hearing Officer. *Id.* A hearing before an Administrative Law Judge ("ALJ") was held on April 27, 2018, at which Claimant was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 36–64). On October 23, 2018, the ALJ issued a decision finding that Claimant's disability ended on April 1, 2016 and that Claimant had not become disabled again since that date. (R. 12–35). On July 31, 2019, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more

---

[1] This is the most recent favorable medical decision known as the "comparison point decision" ("CPD"). (R. 17); *see* 20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1)(vii).

2

than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The initial disability determination, where the issue is whether a claimant is disabled and entitled to Social Security benefits in the first place, is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

3

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

Once a claimant has been found disabled under the Act, a presumption of continuing disability arises. *See Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citation omitted); *see also Modlin v. Saul*, No. 2:18-CV-57-FL, 2020 WL 2848184, at *2 (E.D.N.C. Feb. 6, 2020) (citing *Bellamy*), *mem. & rec. adopted*, 2020 WL 1321475 (E.D.N.C. Mar. 19, 2020); *Packer o/b/o G.G.P. v. Saul*, No. 3:19-CV-257, 2019 WL 4458581, at *2 (S.D. W. Va. Aug. 29, 2019), *rep. & rec. adopted*, 2019 WL 4458864 (S.D. W. Va. Sep. 17, 2019); *Sykes v. Colvin*, No. 5:15-CV-228-RN, 2016 WL 3129174, at *2 (E.D.N.C. June 2, 2016). The Commissioner may not terminate benefits unless substantial evidence demonstrates sufficient medical improvement in a claimant's impairments such that the claimant is able to engage in substantial gainful activity. *See* 42 U.S.C. §§ 423(f), 1382c(a)(4)(A); 20 C.F.R. §§ 404.1594, 416.994. To determine whether a claimant continues to be disabled, an ALJ follows an eight-step sequential evaluation process for DIB claims and a seven-step process for SSI claims. The evaluation processes are essentially the same with the exception of the first step regarding substantial gainful activity, which applies only to DIB claims. The steps are as follows:

(1) Is the claimant presently engaged in substantial gainful activity? If so, and any applicable trial work period has been completed, the claimant's disability ends. If not, proceed to step two.

(2) Does the claimant have an impairment, or combination of impairments, which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant's disability continues. If not, proceed to step three.

(3) Has there been medical improvement as shown by a decrease in the medical severity of the impairment(s) present at the time of the CPD? If so, proceed to step four. If not, proceed to step five.

(4) Was any medical improvement related to the ability to work (i.e., has there been an increase in the claimant's [RFC])? If so, proceed to step six. If not, proceed to step five.

(5) Is there an exception to medical improvement? If not, the claimant's disability continues. If an exception from the first group of exceptions to medical improvement applies (i.e., substantial evidence shows that the claimant has benefitted from "advances in medical or vocational therapy or technology" or "undergone vocational therapy" if either is "related to [the] ability to work"), *see* 20 C.F.R. §§ 404.1594(d) & 416.994(b)(3), proceed to step six. If an exception from the second group applies (i.e., disability determination was fraudulently obtained, claimant was uncooperative, unable to be found, or failed to follow prescribed treatment), *see* 20 C.F.R. §§ 404.1594(e) & 416.994(b)(4), the claimant's disability ends.

(6) Is the claimant's current combination of impairments severe? If so, proceed to step seven. If not, the claimant's disability ends.

(7) Does the claimant possess the [RFC] to perform claimant's past relevant work? If so, the claimant's disability ends. If not, proceed to step eight.

(8) Does the claimant's [RFC], when considered with the claimant's age, education, and work experience, allow the claimant to do other work? If so, the claimant's disability ends. If not, the claimant's disability continues.

*Sykes*, 2016 WL 3129174, at *2–3 (citing 20 C.F.R. §§ 404.1594(f), 416.994(b)(5)). In an action considering termination of benefits, the claimant still has the burden to prove disability, but the Commissioner has the burden of producing evidence to meet or rebut the presumption that the claimant continues to be disabled. *Id.* at *3 (citing *Bellamy*, 755 F.2d at 1381).

In this case, Claimant alleges the ALJ failed to give proper weight to the opinions of his treating physicians. Pl.'s Mem. [DE-24-1] at 5–6.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant was no longer disabled as of April 1, 2016. (R. 15). First, the ALJ determined that the CPD was the May 28, 1997 disability determination, and at that time Claimant met a listing as a result of the medically determinable impairment of end stage chronic kidney disease, status-post transplant. (R. 17). At step one, the ALJ found Claimant had not engaged in substantial gainful activity through the date of decision. *Id.* The ALJ next determined that Claimant's current medically-determinable impairments were chronic kidney disease, status-post transplants; degenerative disc disease; headaches; hepatitis C; major depressive disorder/depression; and anxiety disorder and that they were severe. (R. 17–18). However, at step two, the ALJ concluded that, as of April 1, 2016, these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding, remembering, and applying information and moderate limitations in interacting with others; maintaining concentration, persistence, and pace; and adapting or managing oneself. (R. 19–20). At step three, the ALJ determined that medical improvement occurred on April 1, 2016. (R. 20–21). At step four, the ALJ determined that medical improvement was related to the ability to work because as of April 1, 2016, Claimant's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD. (R. 21). The ALJ appropriately skipped step five based on the step

6

four finding and made the step six severity finding earlier in the decision when assessing the medically determinable impairments.

Prior to proceeding to step seven, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[2] with the following limitations:

> he is limited to occasional overhead reaching with the upper extremities, but frequent reaching in all other directions, pushing, pulling, operating hand controls, fingering, feeling, and/or handling. He can frequently climb ramps and stairs, but he cannot climb ladders, ropes or scaffolds. He can occasionally balance and stoop, frequently kneel and crouch, but never crawl. He must avoid all exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. He can understand and perform simple, routine, repetitive tasks, and maintain concentration[,] persistence[,] and pace to stay on task for 2-hour periods at time over the course of a typical 8-hour workday, in a low stress work setting, further defined to mean no production-pace or quota-based work; rather, he requires a goal-oriented job, with no more than frequent social interaction with supervisors and/or co-workers, but no more than occasional social interaction with the public.

(R. 21–28). In making this assessment, the ALJ found Claimant's statements about his limitations were not persuasive of continued disability based upon the longitudinal medical and other evidence of record. (R. 22). At step seven, the ALJ concluded Claimant had no past relevant work. (R. 28). Nevertheless, at step eight, the ALJ found that upon considering Claimant's age, education, work experience and RFC, Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 29–30).

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

7

## V. DISCUSSION

Claimant contends that the ALJ erred in the RFC determination by improperly weighing the opinions of his treating physicians. Pl.'s Mem. [DE-24-1] at 5–6. The Commissioner submits that the ALJ properly considered the opinions and that substantial evidence supports the ALJ's RFC determination. Def.'s Mem. [DE-32] at 7–16.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and

8

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

### 1. Dr. Gerald Hladik's Opinions

The record contains opinions from Dr. Hladik, Claimant's nephrologist, from 2016 and 2018. The ALJ accurately summarized Dr. Hladik's May 13, 2016 letter and May 2016 written statement as follows:

> Gerald Hladik, MD, the claimant's nephrologist, provided a letter on May 13, 2016 noting the claimant had significant bone disease and degenerative changes in his spine, particularly the cervical spine, secondary to his renal and hepatic history with steroid use to maintain kidney functioning following 3 transplants. Dr. Hladik

9

further observed that neurosurgery recommended the claimant "not lift" following May 9, 2016 evaluation and that multiplicity of his problems had resulted in marked impairment in his functional capacity and ability to work (Ex. 11F). Dr. Hladik also provided an unsigned written statement noting the claimant was unfit for gainful employment due to severe cervical stenosis with cord impingement, anxiety/depression, end stage renal disease, and fatigue secondary to all these condition[s] in May 2016 (Ex. 10F).

(R. 25–26). The ALJ then explained why he found Dr. Hladik's opinions not persuasive:

The undersigned does not find Dr. Hladik's May 2016 medical opinions persuasive because, even though he is a medical specialist who has a treatment relationship with the claimant, his opinions are vague, conclusory, and inconsistent with the overall record evidence, including the claimant's reported farm work. Of note, Dr. Hladik misstated contemporaneous neurosurgical limitations. As discussed herein, neurosurgery repeatedly advised against heavy lifting and heavy activity and the claimant remained "very active" on the family farm (*see e.g.* 13F/2 and 18F/55, [6]0). Similarly, the claimant told medical sources in November 2016 he was feeling much better overall following completion of hepatitis treatment therapy and had increased energy (Ex. 18F/55, 60).

(R. 26).

Claimant first argues that the ALJ's reason for discounting the opinions—because they are "vague, conclusory, and inconsistent with the overall record evidence"—is itself conclusory. Pl.'s Mem. [DE-24-1] at 6. However, the ALJ went on to provide specific examples in support of his determination: Dr. Hladik's misstatement of contemporaneous neurosurgical limitations, Claimant's ability to work actively on his family farm, and Claimant's reported improvement after completion of hepatitis treatment. (R. 26). The ALJ correctly pointed out that while Dr. Hladik stated that neurosurgery recommended Claimant "not lift" at his May 9, 2016 evaluation, the progress note actually stated that Claimant "does heavy lifting in [sic] farm. I have advised him not to continue with *heavy* farm work." (R. 356) (emphasis added). Thus, Dr. Hladik overstated the neurologist's recommended lifting restriction. The ALJ also noted Claimant's report at a November 29, 2016 three-month post-hepatitis treatment follow-up appointment that he "continues to feel much better. His energy level has increased. Remains very active on the farm."

10

(R. 534, 539). Thus, the ALJ's reasoning was not conclusory and was supported by substantial evidence.

Claimant also argues that the ALJ failed to link the evidence cited regarding farm work to the ability to do such farm work on a full-time, ongoing basis. Pl.'s Mem. [DE-24-1] at 6. However, the ALJ did not find that Claimant could perform heavy work, such as farm work, on a full-time basis; rather, the ALJ limited Claimant to reduced range of sedentary work and cited Claimant's reports of doing heavy lifting and being very active on the farm as evidence that Claimant was not as limited as he claimed and that Dr. Hladik's opinion was inconsistent with the evidence of record. (R. 19–21, 23–28). Thus, the ALJ appropriately considered Claimant's daily activities in reaching his conclusion. *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)(4).

The ALJ also discussed and weighed Dr. Hladik's February 16, 2018 opinion as follows:

Dr. Hladik subsequently provided a medical opinion dated February 16, 2018, wherein he reported severe limitations inconsistent with the performance of competitive work. These limitations include needing to lie down and/or recline about 8-hours in an 8-hour workday, sit, stand and walk for less than 3-hours total in an 8-hour workday with normal breaks, and able to use the upper extremities only 50% of the time for manipulation/reaching. Dr. Hladik did note the claimant could occasionally lift up to 20 pounds or more, but he could only occasionally carry up to 10 pounds (Ex. 17F). Dr. Hladik listed the claimant's symptoms as severe daily migraine headaches and extremity numbness, weakness and paresthesia with movement. Dr. Hladik indicated the claimant's impairments, symptoms, and limitations had lasted since August 7, 1991 (Ex. 17F/1). The undersigned also finds Dr. Hladik's February 2018 opinion not persuasive because it is inconsistent with the overall record, including the claimant's reports and hearing testimony about his activities. For instance, Dr. Hladik reported the claimant needed to lie down or recline about 8-hours in an 8-hour day (Ex. 17F/2), yet the claimant denied lying down throughout the day at the hearing, noting he spent most days at the farm hanging out with people there or running errands with his father. The claimant's reports to medical sources, including Dr. Hladik, is reflective of even greater activity- doing manual farm labor and animal husbandry, although no longer riding horses which he did through at least early 2015. As such, Dr. Hladik's statement that the symptoms and severe limitations he reports have existed since August 1991 (Ex. 17F/1) is unsupported by the record. Dr. Hladik also refers to the claimant having daily migraine headaches (Ex. 17F/1), but the claimant's headache medical provider has not diagnosed migraine headaches, and

11

> the claimant testified he does not need to lie down in a dark room for headache relief. He has also denied having hallmark migraine symptoms, such as auras, photophobia, nausea and vomiting. Moreover, headache treatment notes do not show the claimant having daily headaches with medication. Despite the claimant's testimony of extremity weakness, his physical examinations across multiple medical providers have not been remarkable for extremity weakness or focal neurologic deficits. The claimant further testified to walking over to the farm to his father most days, and he has told providers he remains active on the farm. The claimant also denied having his sleep disturbed due to pain. All of which is inconsistent with the severe limitations Dr. Hladik's reports and leads the undersigned to not find his opinion persuasive.

(R. 26). The ALJ thoroughly discussed Dr. Hladik's February 16, 2018 opinion, sufficiently explaining why it was not persuasive and citing substantial evidence in the record in support of his conclusion. *See Dunn v. Colvin*, 607 F. App'x 264, 268 (4th Cir. 2015) ("An ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, see 20 C.F.R. § 404.1527(d) (1998)."). Accordingly, the ALJ's analysis of Dr. Hladik's opinions provides no basis for remand.

### 2. Dr. Edwin Hoeper's Opinions

The record contains the May 16, 2016 and January 29, 2018 opinions of Dr. Hoeper, Claimant's psychiatrist. The ALJ accurately summarized Dr. Hoeper's opinions and weighed them as follows:

> Edwin Hoeper, MD, the claimant's psychiatrist, provided a letter on May 16, 2016 noting his treatment history with the claimant for chronic major depression secondary to his kidney disease, chronic fatigue from it, and recent anxiety since receiving notice of the cessation of disability (Ex. 12F). Dr. Hoeper noted the claimant was mildly compromised in his ability to sustain social relationships and unable to sustain work relationships due to his kidney condition (Ex. 12F/2). As a result, Dr. Hoeper considered him unemployable *(id)*. The undersigned does not find Dr. Hoeper's May 2016 opinion persuasive because it is vague, conclusory, and takes into account the effects of the claimant's physical impairments, which is outside the area of his expertise. As discussed herein, the claimant's kidney

12

condition has remained stable and he has told providers he did not have any renal concerns. Moreover, he remained active on the farm, even with activity modifications, *e.g.* no more horseback riding and he reported having improved fatigue after completing hepatitis treatment in August 2016.

Dr. Hoeper subsequently provided a medical opinion dated January 29, 2018, wherein he reported the claimant had marked limitation in his ability to maintain attention for 2-hour segments, complete a normal workday and workweek without interruptions from psychologically based symptoms, respond appropriately to changes in routine and deal with normal work stress. He further found only moderate limitation (limited, but satisfactory) in the claimant's ability to carry out very short and simple instructions, work in coordination/get along with others, make simple work related decision[s] and perform at a consistent pace without an unreasonable number of and length of rest periods. Notably, he found the claimant only mildly limited in his ability to understand and remember very short and simple instructions, sustain an ordinary routine without special supervision, ask simple questions or request assistance, and be aware of normal hazards and take appropriate precautions. However, Dr. Hoeper found the claimant would be less efficient (less than 80%) than other workers on a sustained basis and would have more than 4 work absences a month. Dr. Hoeper indicated such limitations had been present since 2006 (Ex. 15F). The undersigned finds Dr. Hoeper's January 2018 medical opinion not persuasive because it is overall inconsistent with the evidence of record. While the undersigned agrees with some of the mental limitations reported, the undersigned finds no ongoing support for the reports of marked (and in some cases moderate) limitations. As discussed herein, the claimant has benefitted from medication, including medication adjustments to address reported side effects, with noted symptom improvement, including with respect to anxiety, short-term memory problems, and fatigue. The claimant has had some waxing and waning in his mental health condition with some abnormal findings on mental status examination secondary to situational stressors and effects of medication, but he has not required frequent medication changes in the past several years, and he has not required any emergent treatment for mental health symptoms. Moreover, the claimant has continually reported working and being very active on the family farm (which he may have part ownership of) daily, despite his impairments and symptoms with some activity modification.

(R. 26–27).

Claimant makes the same arguments with respect to Dr. Hoeper's opinions as he did with Dr. Hladik's opinions—that the ALJ's reason for discounting the opinions as "vague, conclusory, and inconsistent with the overall record evidence" is itself conclusory and that the ALJ failed to link the evidence cited regarding farm work to the ability to do such work on a full-time, ongoing

13

basis. Pl.'s Mem. [DE-24-1] at 6. These arguments are likewise rejected with respect to Dr. Hoeper's opinions. The ALJ explained that he found Dr. Hoeper's May 16, 2016 opinion not persuasive because the claimant's kidney condition has remained stable and he had told providers he did not have any renal concerns; he remained active on the farm, even with activity modifications, *e.g.*, no more horseback riding; and he reported having improved fatigue after completing hepatitis treatment in August 2016. (R. 27). Thus, the ALJ's analysis of Dr. Hoeper's May 16, 2016 opinion was not conclusory.

The ALJ also sufficiently explained that he found Dr. Hoeper's January 29, 2018 medical opinion not persuasive because it was inconsistent with the evidence of record. The ALJ noted that Claimant has benefitted from medication, including medication adjustments to address reported side effects, with noted symptom improvement, including with respect to anxiety, short-term memory problems, and fatigue; Claimant has had some waxing and waning in his mental health condition with some abnormal findings on mental status examination secondary to situational stressors and effects of medication, but had not required frequent medication changes in the past several years and had not required any emergent treatment for mental health symptoms; and Claimant continually reported working and being very active on the family farm, despite his impairments and symptoms, with some activity modification. (R. 27). The ALJ appropriately considered the consistency of Dr. Hoeper's opinion with other evidence in the record, including evidence of Claimant's daily activities, in reaching his conclusion, *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)(4), and sufficiently explained his reasoning for discounting the opinion.

Finally, as explained above, Claimant's argument that the ALJ failed to link the evidence cited to the ability to do farm work on a full-time, ongoing basis is rejected because the ALJ limited Claimant to reduced range of sedentary work and cited Claimant's reports of doing heavy lifting

14

and being very active on the farm as evidence that Claimant was not as limited as he claimed and that Dr. Hoeper's opinion was inconsistent with the evidence of record. (R. 19–21, 23–28). Accordingly, the ALJ's analysis of Dr. Hoeper's opinions provides no basis for remand.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-24] is denied, Defendant's Motion for Judgment on the Pleadings [DE-31] is allowed, and the decision of the Acting Commissioner is affirmed.

SO ORDERED, this the 20th day of July 2021.

Robert B. Jones, Jr.
United States Magistrate Judge